NOAH G. BLECHMAN (State Bar No. 197167)
noah.blechman@mcnamaralaw.com
CAMEREN N. RIPOLI (State Bar No. 318045)
cameren.ripoli@mcnamaralaw.com
MCNAMARA, NEY, BEATTY, SLATTERY,
BORGES & AMBACHER LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile: (925) 939-0203

Attorneys for Defendants
Bashar Zeidan, Robert Branch, and Aaron Mandell

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINCY ANDRE PEOPLES,<br><br>Plaintiff,<br><br>vs.<br><br>BASHAR ZEIDAN; ROBERT BRANCH; and AARON MANDELL; ,<br><br>Defendants. | Case No. C16-04099 LHK-SVK<br><br>**JOINT UPDATED CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: February 5, 2020<br>Time: 2:00 pm<br>Judge: Hon. Lucy Koh<br>Dept: Ctrm 8 (San Jose) |

Pursuant to Federal Rule of Civil Procedure 16(a) and Civil Local Rule 16-9 of the U.S. District Court for the Northern District of California, this Joint Updated Case Management Conference Statement is jointly submitted by counsel for all parties in this action. This statement assumes familiarity with the parties' previous Case Management Conference Statement. *See* Dkt. No. 125.

**1. SETTLEMENT CONFERENCE**

The parties attended a Settlement Conference with Judge Illman on January 15, 2020. The parties were unable to resolve the case and further discussions are not currently contemplated.

**2. DISCOVERY**

    a) Plaintiff's Position

        i. Written Discovery

Plaintiff submits that, although the parties have made significant progress towards resolving discovery disputes in meet-and-confers and written correspondence, a short fact discovery extension is warranted for at least three reasons.

*First*, over the course of meet-and-confers and written correspondence, Defense counsel has agreed to produce a very large quantity of responsive documents,[1] but has not yet produced a single document beyond Defendants' December 27, 2019 production. Plaintiff's counsel does not want an impending discovery deadline to necessitate judicial intervention when it would not otherwise have been required. *Second*, many of these documents are highly relevant to noticed depositions, including those of two of the three Defendant officers, and Plaintiff's counsel requires these documents reasonably in advance of these depositions. The impending end of fact discovery will make it difficult to continue those depositions should documents not be timely produced (and the depositions have already been moved once for this reason). *Third*, as noted, some discovery disputes will require further meet-and-confers that the parties hope to resolve without judicial intervention; the current schedule will unduly compress these conversations.[2]

Should the Court deny the parties' request for a trial continuance (discussed below), Plaintiff proposes the following:

| **Scheduled Event** | **Current Date** | **Proposed New Date** |
|---|---|---|
| Close of Fact Discovery | February 14, 2020 | Feb. 28, 2020 |
| Opening Expert Reports | March 20, 2020 | April 3, 2020 |
| Rebuttal Expert Reports | April 10, 2020 | April 24, 2020 |
| Close of Expert Discovery | May 15, 2020 | May 15, 2020 |
| Final Pretrial Conference | May 28, 2020 at 1:30 p.m. | May 28, 2020 at 1:30 p.m. |
| Jury/Bench Trial | June 15, 2020 at 9:00 a.m. | June 15, 2020, at 9:00 a.m. |

---

[1] Documents Defendants have agreed to produce but have not yet produced include, but are not limited to: (1) citizen complaints against the officers, (2) internal affairs investigatory files related to the officer-involved shooting at issue in this case to the degree that they exist, (3) records of legal proceedings involving the Defendant officers, (4) records of another officer-involved shooting involving one of the Defendant officers, (4) Richmond Police Department policies from 2014 and the present, including policies on firing at moving vehicles, and (5) certain trainings the officers may have received.

[2] By way of example, Defense counsel agreed on January 14, 2020, to find out on what devices the Defendant Officers may have stored messages that they sent or received pertaining to the subject of this litigation. Counsel agreed that once that information was gathered, there would be a further meet-and-confer to determine an appropriate search protocol to locate responsive communications. Defense counsel has not yet provided this information.

     ii.  Depositions

Plaintiff has scheduled or completed seven depositions and, by the time of the CMC, will likely have scheduled or completed ten. Most of these depositions have been (or will be) substantially fewer than seven hours. Plaintiff's counsel has asked Defense counsel to stipulate to five more and, to minimize any burden on the part of counsel or witnesses, Plaintiff has agreed to limit the time of each of the depositions to 2.5 hours or less, and to conduct them at Defense counsel's office near where the deponents work. Defense counsel, without disputing the relevance of these depositions, and regardless of Plaintiff's counsel's offer, has refused to so stipulate.

Plaintiff plans to present this issue to Magistrate Judge Van Keulen, and believes that this case merits permitting Plaintiff to conduct additional, limited depositions. The circumstances of this case explain this request. There are three Defendant officers. Each of these officers, in turn, had a "sequestration officer" on the night of the shooting—an individual tasked with escorting the officer to an interview and ensuring the officer did not discuss the details of the shooting with anyone else (which could permit the officers to fabricate or exaggerate their story). The three officers and three sequestration officers alone require six depositions. And these are just the tip of the iceberg: as the police reports Defendants have produced and the criminal trial transcript they similarly produced make clear, there are numerous officers who interviewed witnesses on the night of August 11, 2014 (including potential witnesses who were never called at trial); officers who investigated the shooting and collected forensic evidence; officers who, at trial, testified about the substance of Richmond Police Department policies on investigating officer-involved shootings; and officers who were mentioned in the Defendants' testimony as corroborating accounts of their sequestration on the night of the incident. Plaintiff is not asking to depose all of these individuals, and is not asking for fifteen seven-hour depositions. But, subject to reasonable limitations, Plaintiff cannot practically gather all relevant information for trial with ten depositions alone.

    b) <u>Defendants' Position</u>

There has been a significant amount of discovery performed in this case and the parties are currently working together to resolve any written discovery disputes in an attempt to avoid judicial intervention and to schedule the remaining fact witness depositions before the close of fact

discovery on February 14, 2020. Plaintiff's counsel has indicated an intention to conduct numerous more depositions. Defendants object to more than ten depositions being taken by Plaintiff in this case and at least seven are expected to be completed and/or scheduled by the time of the Case Management Conference.

## 3. SCHEDULING/CONTINUING TRIAL DATE

Pursuant to ECF 144, the schedule is listed below, though the parties seek to continue the trial date for several months per explanations below. The current schedule is as follows:

| Scheduled Event | Current Date | Proposed New Date |
|---|---|---|
| Close of Fact Discovery | February 14, 2020 | TBD |
| Opening Expert Reports | March 20, 2020 | TBD |
| Rebuttal Expert Reports | April 10, 2020 | TBD |
| Close of Expert Discovery | May 15, 2020 | TBD |
| Final Pretrial Conference | May 28, 2020 at 1:30 p.m. | TBD |
| Jury/Bench Trial | June 15, 2020 at 9:00 a.m. | TBD |
| Length of Trial | 5 days | 5 days |

    a) Parties' Position

Subject to the Court's availability and agreement, all parties would like to continue the trial date until the late summer or early fall of 2020. The current trial date poses a conflict for both Defendant Officer Mandell and Plaintiff.[3] The pending *Torres* case (see discussion in Motions) provides a further potential reason for moving the trial date.

With the Court's input on its availability, the parties believe a new trial date could be set in September or October of 2020. If the trial date is moved, then corresponding expert disclosure and the Pretrial Conference can also be reset. Plaintiff submits that the fact discovery deadline should be further extended, as well, should the Court move the trial date.

## 4. MOTIONS

    a) Defendant's Position

---

[3] Officer Mandell has a significant conflict with the current trial date as his child is graduating college on the weekend of June 13th- 14th and he has a preplanned family vacation during that weekend and into the following week to celebrate with family from out of the area. Mr. Peoples, when the court previously set the trial date, believed he would no longer be incarcerated as of that date, but at present believes he is likely to be incarcerated through at least August 1, 2020—and potentially as late as September 1, 2020. For these reasons, the parties' have jointly agreed to ask the Court to move the trial date to a time when Officer Mandell and Mr. Peoples can attend.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

Defendants request the opportunity to file an extremely limited and targeted partial motion for summary judgment focused on one of the key issues in this case, Plaintiff's excessive force claim against Officers Zeidan and Branch for their use of deadly force towards him. This request is prompted by recent developments to Fourth Amendment jurisprudence that will speak directly to how to apply the Fourth Amendment in the § 1983 excessive force context and could potentially be dispositive of that key issue in this case. This issue is up on appeal to the Supreme Court per a Tenth Circuit case. *See Torres v. Madrid*, 769 Fed. Appx. 654 *7-8 (10th Cir. 2019); *See also Torres v. Madrid*, No. 19-292, 2019 U.S. LEXIS 7619; WL 6880700 (Dec. 18, 2019) (The Supreme Court's Order granting certiorari in *Torres v. Madrid*).

In *Torres*, the Tenth Circuit dealt with facts that were practically identical to the current case. *Torres*, 769 Fed. Appx. 654 *2-4. There, two officers fired multiple shots at Ms. Torres, who was driving a vehicle, because the officers feared Ms. Torres was going to strike them with the vehicle. Despite being struck by two bullets, Ms. Torres successfully fled and continued driving and eventually drove seventy-five miles before she was arrested after she went to a hospital for treatment of her gunshot wounds. *Id*. Ms. Torres then filed a § 1983 action alleging the officers used excessive force during the encounter, namely the gunshots. *Id*. The district court found the officers were entitled to qualified immunity and reasoned at the time of the shooting the officers had not seized Ms. Torres, and without a seizure, there could be no Fourth Amendment violation. *Id*. The Tenth Circuit unanimously affirmed the district court's ruling and similarly found "<u>a suspects continued flight after being shot by police negates a Fourth Amendment excessive-force claim . . .because 'a seizure requires restraint of one's freedom of movement</u>.'" *Torres*, 769 Fed. Appx. 654 *7-8, *citing Brooks v. Gaenzle*, 614 F. 3d 1213, 1223-24 (10th Cir. 2010). Just as in the current case, Ms. Torres successfully eluded the police for almost a full day after the shooting and there can be no genuine issue of material fact that neither Ms. Torres, nor Plaintiff, were seized by the respective officers' use of force.

There is support for the argument that the Fourth Amendment does not attach if a suspect successfully evades law enforcement, thereby preventing an actual seizure. *California v. Hodari D.*, 499 U.S. 621, 626–28 (1991) ("Regardless of how unreasonable the officers' actions were, and

regardless of how reasonable it was for [the individual] to feel restrained," if an individual was not physically touched by the police and did not actually submit to their authority, there was no seizure and the Fourth Amendment is not implicated.); *see also United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994) *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009). These cases shine some light on what the Supreme Court may decide in *Torres* and Defendants should have the opportunity to brief how these cases limit Plaintiff's ability to file a Fourth Amendment § 1983 claim in the current action.

Judge Beeler dealt with this issue on a case where a fleeing suspect in a vehicle, despite being impacted by police vehicle, continued fleeing until it finally stopped and the driver was removed from the vehicle (and the passenger fled and was then shot). Judge Beeler found that the driver/passenger was not "seized" per the Fourth Amendment during the car pursuit, despite contact by law enforcement vehicles, and so all the actions of law enforcement up to the point of the seizure at the end of the pursuit, was irrelevant as the Fourth Amendment did not attach until the driver/passenger succumbed to the law enforcement authority. *Burns v. City of Concord*, C14-00535 LB, ECF 250 (11-28-17) (Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment), see pgs. 11-16.

As mentioned above, on December 18, 2019, the Supreme Court granted certiorari to hear the *Torres* matter on the merits during the October 2019 term. *See also Torres v. Madrid*, No. 19-292, 2019 U.S. LEXIS 7619; WL 6880700 (Dec. 18, 2019). The *Torres* case has been fully briefed by the parties and the oral argument for this case will likely be set in March or April 2020 and a decision would then likely be issued in May or June 2020. The Supreme Court would not have granted certiorari for the *Torres* case if they did not feel that the case could have national significance that might harmonize or clarify legal precedent in federal circuit courts, and/or could have precedential value. Obviously, the *Torres* case is factually similar, and arguably, legally identical, to Plaintiff's case and in the interest of justice and in the interest of the "just, speedy, and inexpensive" resolution of lawsuits, Officer Zeidan and Officer Branch should be afforded the opportunity to have the Supreme Court definitively speak on this important issue before they are made to proceed with a costly, time consuming, and stressful trial process. *Hoffman v.*

*Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).

Federal Rule of Civil Procedure 56 does not limit the number of motions that may be filed. *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). The Ninth Circuit has rejected the position that successive motions for summary judgment are categorically impermissible. *See Knox v. S. W. Airlines*, 124 F.3d 1103, 1105-06 (9th Cir. 1997). Indeed, the Ninth Circuit has held "that district courts have discretion to entertain successive motions for summary judgment, independent of whether the motions involve qualified immunity." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010); *see also Cable & Computer tech. Inc. v. Lockheed Sanders, Inc*., 214 F.3d 1030, 1038 (9th Cir. 2000). The Ninth Circuit has held that "allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) citing Fed. R. Civ. P. 1. Many circuit courts have held that district courts may permit successive motions for summary judgment. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009); *Lexicon, Inc. v. Safeco Ins. Co. of Am.,* Inc., 436 F.3d 662, 670 n.6 (6th Cir. 2006); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004); *Fenney v. Dakota, Minn. & E. R.R. Co*., 327 F.3d 707, 718 (8th Cir. 2003); *Enlow v. Tishomingo County*, 962 F.2d 501, 506-07 (5th Cir. 1992).

It is clearly established it is within a district court's discretion to permit successive motions for summary judgment. Such motions are particularly appropriate in a case where there is an expanded factual record between the first and second motions or in the event of an intervening change in the law that could impact the outcome of the motion. *Smith v. McGarvie*, 321 F. Appx 665, 666 (9th Cir. 2009); *see also Robinson v. Denver Art Museum*, No. 11-cv-00315-REB-BNB, U.S. Dist. LEXIS 37098 *1 (D. Colo. 2012). Further, successive motions could be granted in order to correct a clear error or prevent manifest injustice. *AAA Flag & Banner*, U.S. Dist. LEXIS 147629, *3-4 (C.D. Cal. 2010) quoting *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986). Courts should consider whether allowing a party to file a second motion for summary judgment would foster the "'just, speedy, and inexpensive' resolution of suits.'" *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010) citing Fed. R. Civ. P. 1.

Here, Your Honor should allow Defendants the opportunity to file an extremely limited and

targeted partial motion for summary judgment focused on Plaintiff's excessive force claim against Officers Zeidan and Branch. Defendants' request for a second motion is prompted by intervening changes in the law which took place after the filing of the first motion and the potential that the Supreme Court could issue a ruling regarding the application of the Fourth Amendment to § 1983 claims, that could be dispositive on that force issue in the current case. Defendants' motion would exclusively and succinctly address whether Plaintiff's failure to submit to the officers' authority, despite the use of force, negates Plaintiff's ability to file a § 1983 claim against the officers for unlawful seizure under the Fourth Amendment. There is support for this argument in the Ninth Circuit, however, those cases mainly arise out of the criminal law search and seizure context of the Fourth Amendment and do not address a plaintiff's ability to bring a § 1983 suit. *United States v. Hernandez*, 27 F. 3d 1403, 1407 (9th Cir. 1994); *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009). The *Torres* case, will specifically address whether a plaintiff, who was not actually stopped by the use of deadly force, can bring a § 1983 claim for excessive force.

If the Supreme Court's prior rulings are any indication, the Tenth Circuit's decision in *Torres* may be upheld and Officers Zeidan and Branch would be entitled to summary judgment on Plaintiff's unlawful seizure claim. *See California v. Hodari D.*, 499 U.S. 621, 626–28 (1991); *Brendlin v. California*, 551 U.S. 249, 254 (2007) (Under the Fourth Amendment there is no seizure without actual submission). If Defendants' were not allowed the opportunity to brief this emerging issue, then there is a significant risk that after all parties, including the Court, expend massive amounts of time and resources to try the case, a jury could reach a verdict on the excessive force issue that is completely contradictory to Fourth Amendment jurisprudence and would effectively hold Officers Zeidan and Branch to a higher legal standard then every other police officer in the nation. Your Honor should take reasonable steps to prevent such an outcome, including to allow Defendants to file a limited successive motion for partial summary judgment to address the seizure issue. <u>These issues may also have to wait to be briefed until the Supreme Court issues its ruling on *Torres*.</u>

Additionally, the factual record at the time of the first motion for summary judgment was limited as no significant written discovery had been performed and only Plaintiff's deposition had

been taken. Since then, Plaintiff has been appointed legal counsel and the factual record has been significantly expanded. There has been extensive written discovery performed and Plaintiff has conducted a number of depositions, including the officer depositions which will be completed in the coming weeks. This expanded factual record lends support to Defendants' request for this further targeted motion as there is a large amount of information that was not available for the prior motion for summary judgment that could have a significant positive impact on Defendants' limited successive motion for partial summary judgment, not to mention the case is being developed on this particular "seizure" issue.

Granting Defendants an opportunity to file a successive partial motion for summary judgment could be accommodated with minimal disruption to the Court considering discovery will proceed according to the current deadlines and <u>both parties are seeking to move the trial date from June 2020 to September or October 2020</u>. Defendants anticipate the Supreme Court will issue a ruling in *Torres* in either May or June 2020, and at the latest, near the start of the October 2020 term. As such, Defendants request that Your Honor allow the Supreme Court to issue a ruling in *Torres* before setting a briefing schedule for Defendants' successive partial motion for summary judgment. Certainly, any inconvenience this request may cause to the schedule is significantly outweighed by the risk of proceeding with costly and time consuming pre-trial and trial procedures while the Supreme Court simultaneously considers a legal issue that could be dispositive of Plaintiff's key excessive force claim. Defendants are amenable to work with the Court and Plaintiff to determine a briefing schedule that allows time for the Supreme Court to issue a ruling on the *Torres* case, while simultaneously positioning the case for a possible trial at the appropriate time.

The parties attest that concurrence in the filing of these documents has been obtained from each of the other Signatories, which shall serve in lieu of their signatures on the document.

b) <u>Plaintiff's Position</u>

Plaintiff reserves his right to fully brief the seizure requirement in any partial motion for summary judgment and does not believe this CMC statement is the appropriate place to do so.

In brief, Defendants' position ignores controlling Ninth Circuit law. The Petitioners in *Torres* sought *certiorari* on the basis of a circuit split, and explained that the Ninth Circuit, unlike

the Tenth, has held that "law enforcement officers' intentional application of force to a person effects a seizure, whether or not the force is successful in preventing the person from fleeing." Pet. for Certiorari, *Torres v. Madrid*, No. 19-292, 2019 WL 4203519 (U.S.), 9-12 (citing *Nelson v. City of Davis*, 685 F.3d 867, 876 n.4 (9th Cir. 2012).)  In *Nelson*, the Ninth Circuit addressed whether a Fourth Amendment excessive force claim could proceed even when an individual, subjected to that force, does not "submit[]" to the officers' authority.  685 F.3d at 876 n.4.  The panel explained that, "the mere assertion of police authority, without the application of force, does not constitute a seizure unless an individual submits to that authority."  *Id.* (citing *California v. Hodari D.,* 499 U.S. 621, 626–27 (1991).)  The Ninth Circuit further observed, however, that "when that show of authority includes the *application of physical force,* a seizure has occurred even if the object of that force does not submit."  *Id.* (emphasis in original).[4]

If Defendants believed that under the current Ninth Circuit standard—as opposed to a new standard that may be imposed by the Supreme Court in *Torres*—there was a basis to dismiss Plaintiff's Fourth Amendment excessive force claim, they should have made that argument in their first motion for summary judgment.  *See Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-CV-04405-HSG, 2020 WL 247948, at *2–3 (N.D. Cal. Jan. 16, 2020) (finding good cause lacking for a second summary judgment motion where the party proposing the motion "provides no explanation as to why it could not have brought its desired motion previously"); *cf. Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 1265009, at *6 (N.D. Cal. Mar. 19, 2015) ("I am unaware of any authority requiring a district court to entertain a second summary judgment motion where the motion is based on previously available evidence.").[5]

Nevertheless, Plaintiff agrees that, depending on how the Supreme Court resolves *Torres*, it may be beneficial for the parties to brief the seizure requirement after that decision comes down. It is, for instance, not clear that, even if the Supreme Court affirms the Tenth Circuit's unpublished

---

[4] *Nelson* relied on *Hodari*; Defendants suggest above that *Hodari* requires an alternative conclusion, but fail to cite or address *Nelson*.

[5] Defendants note that Plaintiff has expanded the factual record in this case through additional discovery; that is true, but Defendants' motion does not purport to rely on any of this new material, and could easily have been brought earlier to the degree not based on any ultimate ruling by the Supreme Court in *Torres*.

disposition, that would mean Plaintiff in this case was never seized within the meaning of the Fourth Amendment: there is no question that the Defendants' decision to fire on Mr. Peoples' and on his vehicle resulted in his crashing the vehicle, which at a minimum temporarily halted his progress and rendered the vehicle inoperable. *See Brooks v. Gaenzle*, 614 F. 3d 1213, 1225 (10th Cir. 2010) (leaving open the possibility that the "'momentary' stopping of an individual [as a result of police force]," even if that individual ultimately "walked away unpursued by police" could satisfy the seizure requirement under Tenth Circuit case-law); *Torres*, 769 F. App'x at 657 n.1 (declining to address undeveloped argument that "a seizure occurred because [Torres's] 'vehicle was shot up and rendered undrivable'"). This issue can be briefed by the parties, however, after the Supreme Court rules.

Regardless of the outcome of Defendants' partial motion for summary judgment and the *Torres* case, Plaintiff's conspiracy and false arrest charges against all three Defendants will go forward. Thus, even if Plaintiff's excessive force claim under the Fourth Amendment were dismissed, it would not alter the scope of discovery or the trial.

That is true for a second reason. If the *Torres* decision materially alters the Ninth Circuit's seizure requirement such that Plaintiff was not seized as a matter of law under the Fourth Amendment, Plaintiff should simply be able to try his claim that Officers Zeidan and Branch deliberately and maliciously used unreasonable, deadly force against him as a violation of his Substantive Due Process rights under the Fourteenth Amendment. In his Second Amended Complaint, Plaintiff did not specify that he brought his excessive force claim under the Fourth, rather than Fourteenth, Amendment: instead, his allegations stated a claim under either constitutional frame. *See, e.g.*, Second Amended Complaint, Dkt. No. 33, at 3-4 ("The reckless and outrageous actions of Zeidan and Branch were a deliberate attempt to deprive me of my life, my liberty, and my property"); *see also* Opposition to Summary Judgment, Dkt. No. 69, at 12-13 ("Richmond Police Officers Bashar Zeidan and Robert Branch both attempted to murder me in cold blood for no reason."). The Defendants appear to have assumed that this excessive force claim was brought under the Fourth Amendment, and indeed, Plaintiff's complaint does assert a Fourth Amendment excessive force claim, which is plainly cognizable under current Ninth Circuit law (the

Court, screening Plaintiff's earlier complaint, determined that he had "stated a cognizable claim of excessive force" without questioning whether he was seized (Dkt. No. 25 at 2.).)

Liberally construed, Plaintiff's Second Amended Complaint also alleges a claim under the Fourteenth Amendment, which recognizes excessive force claims that do not arise under the Fourth . *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (rejecting argument that a claim alleging police officers used unreasonable force when "attempting to make a seizure within the meaning of the Fourth Amendment" could not "support a due process claim," as "[s]ubstantive due process analysis is … inappropriate in this case only if respondents' claim is 'covered by' the Fourth Amendment," and because no "search[ or] seizure[] … took place," it was not). Here, if indeed *Torres* changes the seizure requirement such that Plaintiff cannot try a Fourth Amendment excessive force claim, it follows his Substantive Due Process claim is viable, and he should be permitted to try this claim against Officers Zeidan and Branch under the Fourteenth Amendment.[6]

|  |  |
|---|---|
|  | MUNGER, TOLLES & OLSON LLP |
| Dated:  January 29, 2020 | By:  /s/  J. Max Rosen |
|  | Laura K. Lin |
|  | C. Hunter Hayes |
|  | J. Max Rosen |
|  | Attorneys for Plaintiff |
| Dated:  January 29, 2020 | MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP |
|  | By:   /s/ Blechman, Noah G. |
|  | Noah G. Blechman |
|  | Cameren N. Ripoli |
|  | Attorneys for Defendants |
|  | Bashar Zeidan, Robert Branch, and Aaron Mandell |

---

[6] Should the Court believe Plaintiff must amend his operative complaint for this outcome, Plaintiff consents to doing so; however, the operative complaint, filed by Plaintiff *pro se*, already alleges facts sufficient to state a claim for a substantive due process violation, and no amendment is necessary. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("[O]ur 'obligation' remains, 'where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc).)